724 F.Supp. 674 (1989)
Connie BEEMAN, Plaintiff,
v.
SAFEWAY STORES, INC., et al., Defendants.
No. 88-0463-CV-W-3.
United States District Court, W.D. Missouri, W.D.
September 29, 1989.
On Motion For Reconsideration October 25, 1989.
*675 J.C. Hambrick, Jr., Schulz, Bender, Maher & Blair, P.C., Kansas City, Mo., for plaintiff.
Stanley E. Craven and Georgann H. Eglinski, Spencer Fane Britt & Browne, Kansas City, Mo., for defendants.

MEMORANDUM AND ORDER
ELMO B. HUNTER, Senior District Judge.
Before the Court is defendants' motion, pursuant to Fed.R.Civ.P. 56(c), to grant summary judgment in their favor on Counts II and III of plaintiff's Third Amended Complaint. Counts II and III are state law claims pendent to plaintiff's Title VII claim in Count I. Count II is based on the prima facie tort doctrine as recognized by Missouri. Count III alleges the tort of intentional infliction of emotional distress. Missouri law controls both claims.
Plaintiff, a female, was a store manager for Safeway Stores, Inc. from 1984 until she resigned in 1986.[1] During that period, defendant Dale Wilkinson, as a district manager for Safeway, was plaintiff's immediate supervisor. Plaintiff alleges in her complaint that she was subjected to various forms of sexual harassment and discrimination. Plaintiff alleges that she endured sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature. Plaintiff realleges all of these allegations in Count II. She further alleges in Count II that "[b]y reason of the foregoing acts of Defendants, [she] was subjected to the following: numerous meetings with Defendants, complaints about her performance, denial of promotion and intolerable work conditions."
After plaintiff informed defendant Wilkinson that she was "near a nervous breakdown due to his constant [verbal] attacks" on her, he yelled at her and called her a "wimp," a "loser" and a "liar." She further states that on occasion Wilkinson continued to attack her verbally after she became visibly distraught. In her deposition plaintiff testified that Wilkinson harassed her by making daily checks on her work, by "belittling" her work performance, by reprimanding her in meetings that lasted up to three hours, by making long lists of things for her to do, by asking her to accomplish work tasks that were impossible to accomplish within the allotted time and by "threatening" her employment.
Curiously, in defendant Wilkinson's deposition he stated that plaintiff was "a good store manager," an evaluation not consistent with his alleged harsh treatment of plaintiff. However, plaintiff testified that Wilkinson was "very hard [on] and very stern" with all employees under his supervision. *676 Moreover, plaintiff explained in her deposition that she believed that at least some of Wilkinson's conduct was motivated by Wilkinson's desire to impress his supervisor.
At some point during this period, plaintiff requested a transfer out of Wilkinson's district. It is unclear whether those responsible made any final decision regarding plaintiff's request, but plaintiff apparently believed, based on her meetings with Wilkinson, that she had been denied the transfer and had no alternative but to resign. After filing a charge of discrimination with the EEOC, plaintiff instituted the present action.

I.
When determining whether summary judgment is proper, the Court is to view the facts "in the light most favorable to the opposing party." Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142, 154 (1970). Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. With respect to an issue on which the nonmoving party bears the burden of proof, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In rebuttal, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Whether a "genuine issue" exists depends on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986).
In Count II of her Third Amended Complaint plaintiff claims both compensatory and punitive damages under the prima facie tort theory. Although the prima facie tort has not been recognized by Missouri's Supreme Court, the Missouri appellate courts have nominally adopted the theory and unanimously agree upon the elements which are: an intentional lawful act by the defendant; an intent to cause injury to the plaintiff; injury to the plaintiff; and an absence of any justification or an insufficient justification for the defendant's act. Kiphart v. Community Federal Savings & Loans Assoc., 729 S.W.2d 510, 516 (Mo. Ct.App.1987). The courts have justified adoption of the theory as a means of redressing "a small residue of tortious conduct" which enjoyed immunity under traditional principles of tort law. Lundberg v. Prudential Ins. Co. of America, 661 S.W.2d 667, 670 (Mo.Ct.App.1983). Specifically, the tort is meant to reach defendants who engage in otherwise lawful conduct primarily for the purpose of maliciously injuring someone else. A plaintiff who proceeds under the prima facie tort theory has a heavy burden to shoulder. Plaintiff bears the burden of proving each and every element of the tort. Kiphart, 729 S.W.2d at 516.
The Court notes the caution with which Missouri courts have approached the prima facie tort. Research reveals no Missouri case resulting in a verdict for a plaintiff on a prima facie tort theory which has been affirmed by an appellate court. Southwestern Bell Telephone Co. v. Buie, 758 S.W.2d 157, 164 (Mo.Ct.App.1988). The Missouri Supreme Court has also refused to allow an at will employee to maintain an action for wrongful discharge on a prima facie tort theory. Brown v. Missouri Pacific Railroad Co., 720 S.W.2d 357, 362 (Mo.1986) (en banc); accord Dake v. Tuell, 687 S.W.2d 191 (Mo.1985) (en banc). The rationale for denying this cause of action to at will employees is that allowing it would eviscerate Missouri's "at will" doctrine. 687 S.W.2d at 193.
In this case, plaintiff has not established the first element of a prima facie tort. *677 Plaintiff has failed to allege an intentional lawful act by the defendants. Rather, plaintiff has alleged that defendants' "action ... was an intentional unlawful act." Moreover, the gist of her complaint is that, "by reason of" various forms of alleged sexual harassment and sexual discrimination (acts which she realleges in paragraph 1 of Count II), defendants subjected her to "numerous meetings with Defendants, complaints about her performance, denial of promotion, and intolerable work conditions." Intentional acts "by reason of" sexual harassment and sexual discrimination are unlawful acts and thus not actionable, as a matter of law, under the prima facie tort theory. See Greco v. Robinson, 747 S.W.2d 730, 734 (Mo.Act.App.1988) (affirming summary judgment against plaintiffs who alleged, in support of their prima facie tort claim, acts that were unlawful). Defendants' motion for summary judgment must therefore be granted with respect to Count II of plaintiff's Third Amended Complaint.

II.
In Count III of plaintiff's Third Amended Complaint plaintiff is claiming intentional or reckless infliction of emotional distress. Under Missouri law, a plaintiff must prove three elements to recover for intentional or reckless infliction of emotional distress, sometimes referred to as the tort of "outrage" or "outrageous conduct." First, the plaintiff must establish that the defendant's conduct was extreme and outrageous. Second, the plaintiff must show that the defendant acted in an intentional or reckless manner. The third element a plaintiff must prove is that the defendant's conduct caused plaintiff to suffer severe emotional distress. Greco v. Robinson, 747 S.W.2d 730, 735 (Mo.Ct.App.1988).
To be actionable, the emotional distress of which plaintiff complains "must be medically diagnosable and must be of sufficient severity so as to be medically significant." Bass v. Nooney Co., 646 S.W.2d 765, 772-73 (Mo.1983) (en banc). Examples of such medically significant distress include "continuing nervousness, sleeplessness, or nausea for which a physician would prescribe medication .... `Harm,' then, is mental distress serious enough to require medical attention" but is not "mere upset, dismay, humiliation, grief and anger." Id. at 733, n. 4 (emphasis added) (quoting Comment, 33 Hastings L.J. 291, 309 (1981), and Comment c under Section 436A of Restatement (Second) of Torts (1965)).
In Greco, the court affirmed the trial court's entry of summary judgment against plaintiffs who claimed intentional infliction of emotional distress but failed to provide any expert medical testimony in support of their claim. 747 S.W.2d at 735-36. Plaintiffs' only evidence of emotional distress was their own testimony. This, the court held, was insufficient to survive the motion for summary judgment. Id. Moreover, the court held that the plaintiff's complaints of periodic nervousness, headaches and stomach problems did not add up "to the type of emotional distress required to give a cause of action." Id. at 736 (quoting Leonard v. Pioneer Finance Co., 568 S.W.2d 937, 942 (Mo.Ct.App.1978)).
Likewise, a plaintiff who witnessed a car accident and complained of "muscle twitching, weakness, disturbed sleep, stomach ache and unwarranted fears of walking and being hit by a motor vehicle" had shown "no damages cognizable under the Bass decision." Davis v. Shelton, 710 S.W.2d 8, 10-11 (Mo.Ct.App.1986). The car accident had occurred in September 1983 but plaintiff sought no medical treatment until January 1985. In addition, plaintiff failed to produce any affidavits attesting to any distress or injury during the period from July 1984, when she answered defendants' interrogatories, through February 7, 1985, when the motion for summary judgment was granted. The court held that the facts, viewed in the light most favorable to the plaintiff, did not support recovery. Id. at 11. Moreover, the court held that the plaintiff's damages "were not sufficiently severe as to be legally cognizable." Id.
In the present case, the parties have focused on and disagreed about whether defendants' conduct was extreme and outrageous. The Court, however, need not *678 reach this issue because plaintiff has undoubtedly failed to offer the slightest evidence of mental distress which is medically diagnosable and sufficiently severe so as to be medically significant. Plaintiff's complaint alleges no specific injury but only "emotional distress and humiliation [which] is medically significant." Humiliation is not a medically significant injury. Bass, 646 S.W.2d at 73, n. 4. Plaintiff must point to specific evidence showing that she has suffered medically significant emotional distress; she may not rely on her conclusory allegations. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. In her affidavit submitted in support of her opposition to defendants' motion for summary judgment, plaintiff incorporated by reference her Statement of Facts as set out in Plaintiff's Suggestions in Support of Plaintiff's Reply to Defendants' Motion for Summary Judgment. That statement of facts alleges no emotional distress, much less emotional distress severe enough to be actionable. In addition, plaintiff's affidavit itself fails to allege emotional distress of any sort. Plaintiff also submitted to the Court the affidavit she filed with the EEOC; it, too, fails to allege any emotional distress.
Although counsel for plaintiff failed to point the Court to the relevant portions of plaintiff's deposition, upon review of that deposition the Court has found that plaintiff visited a doctor in 1985 or 1986 before she resigned. Plaintiff testified that she went to a doctor, a general practitioner, and asked him for "nerve pills," but the doctor refused to prescribe any. Plaintiff also testified that she suffered from chest pains and shortness of breath, symptoms which first appeared two months before she resigned in December 1986. Plaintiff, however, sought no medical treatment for these symptoms until December 1987. Thereafter, plaintiff testified that she received injections and other medication for pneumonia for which she was ultimately hospitalized in May 1988. At the time plaintiff was hospitalized she complained of "a hundred percent paralysis." While she was hospitalized, plaintiff saw a psychologist and in June 1988 she saw a psychiatrist. The results of those consultations are not indicated in the record.
Viewing the evidence in the light most favorable to the plaintiff, the Court finds that there is no evidence which could support a reasonable inference that the conditions from which plaintiff suffered in 1988 were caused by defendants' alleged conduct. Rigby Corp. v. Boatmen's Bank and Trust Co., 713 S.W.2d 517, 542 (Mo.Ct. App.1986) ("A plaintiff, to prove the cause of action in tort, therefore, must adduce evidence which allows the reasonable inference that, more likely than not, the misconduct of the tortfeasor was a cause in fact of the result.") However, the evidence might support the inference that the nervousness, shortness of breath and chest pains were causally linked to plaintiff's employment troubles. Nevertheless, there is no evidence that plaintiff's nervousness, shortness of breath or chest pains were medically significant. By plaintiff's own testimony, the only doctor whom she consulted for the nervousness refused to prescribe the medication she sought. According to Bass, nervousness may be actionable if it is a continuing nervousness "for which a physician would prescribe medication." 646 S.W.2d at 773, n. 4 (emphasis added). The shortness of breath and chest pains were apparently not medically significant, either, a conclusion buttressed by the fact that plaintiff failed to seek treatment for more than a year after the symptoms' alleged onset.
Another reason that summary judgment must be entered against plaintiff on this claim is that, according to Greco, a plaintiff who pursues a claim for intention infliction of emotional distress cannot survive a motion for summary judgment without providing some expert medical testimony in support of the claim. 747 S.W.2d at 735. Though plaintiff's counsel asserts that there is medical evidence to support plaintiff's claims, not a shred of such evidence has been brought to the Court's attention. Therefore, defendants' motion for summary judgment on Count III must also be granted.
*679 Accordingly, it is hereby ORDERED that defendants' motion for summary judgment on Counts II and III should be and the same is hereby GRANTED.
It is FURTHER ORDERED that the Clerk shall not enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure until further Order of this Court.
IT IS SO ORDERED.

ON MOTION FOR RECONSIDERATION
Before the Court is plaintiff's motion for reconsideration of the summary judgment entered against her on Count III of her Third Amended Complaint. Count III states a cause of action for intentional infliction of emotional distress. Defendants moved for summary judgment on Count III and contended that defendants' conduct was not actionable because it was not, as a matter of law, "extreme and outrageous," one of the elements of the claim. The Court granted the summary judgment but rested its ruling on the ground that plaintiff had failed to offer any proof of medically significant emotional distress. Plaintiff, urging the Court to reconsider its ruling on the basis of unpresented evidence, claims that she was not on notice that she should present evidence of each element of her claim since defendants challenged only the "extreme and outrageous" element.

I.
As a preliminary matter, the Court notes that it has authority to reconsider its ruling on the motion for summary judgment. Fed.R.Civ.P. 54(b) ("In the absence of [an express determination that there is no just reason for delay and express direction for the entry of judgment], any order ... which adjudicates fewer than all the claims ... is subject to revision at any time before the entry of judgment adjudicating all the claims...."); accord United States v. Desert Gold Mining Co., 433 F.2d 713 (9th Cir.1970). In light of the Court's authority to enter sua sponte a summary judgment, the prudent course for the nonmoving party faced with a motion for summary judgment is to present evidence on each element of the challenged claim. However, in fairness the Court should reconsider the entry of a summary judgment when it is asked to do so and when its ruling was based on grounds other than those technically raised by the motion for summary judgment. For the reasons stated below, plaintiff's motion for reconsideration must be granted.
Plaintiff alleged in her complaint that she was subjected to various forms of sexual harassment and discrimination. Plaintiff alleged that she endured sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature. She further alleged that "[b]y reason of the foregoing acts of Defendants, [she] was subjected to the following: numerous meetings with Defendants, complaints about her performance, denial of promotion and intolerable work conditions." Plaintiff incorporates all of these allegations in Count III of the complaint.
Plaintiff has adduced evidence showing that after plaintiff informed defendant Dale Wilkinson, her former supervisor, that she was "near a nervous breakdown due to his constant [verbal] attacks" on her, he yelled at her and called her a "wimp," a "loser" and a "liar" and continued to attack her verbally after she became visibly distraught. In her deposition plaintiff testified that Wilkinson harassed her by making daily checks on her work, by "belittling" her work performance, by reprimanding her in meetings that lasted up to three hours, by making long lists of things for her to do, by asking her to accomplish work tasks that were impossible to accomplish within the allotted time and by "threatening" her employment.
Plaintiff has attached to her motion the affidavits of two of her treating physicians. The affidavit of Dr. Quiason states that plaintiff suffers from "recurrent, severe anxiety attacks related to unresolved matters with Safeway." He further states that she "suffers from severe headaches, marked sustained internal shakiness, tightness in her chest and neck, stomach distress, claustrophobia and other such symptoms." In addition, Dr. Quiason has stated that plaintiff is taking prescriptive medication *680 "to manage her emotional balance." Defendants' response is essentially just an attack on the weight of plaintiff's evidence. The Court, therefore, finds that plaintiff has raised a genuine issue of material fact by presenting evidence, though only a modicum, that she has suffered "medically significant" emotional distress and that defendants caused it.

II.
The Court now must decide whether plaintiff has raised a genuine issue of material fact with respect to the element of "extreme and outrageous" conduct. "[I]t is for the court to determine, in the first instance, whether the defendants [sic] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Frye v. CBS Inc., 671 S.W.2d 316, 319 (Mo.Ct.App.1984). Not surprisingly, no precise definition of "extreme and outrageous" conduct can be found in Missouri law. Boes v. Beschu, 768 S.W.2d 205, 207 (Mo.Ct.App.1989). For conduct to be actionable, it must be:
so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.
Pretsky v. Southwestern Bell Telephone Co., 396 S.W.2d 566, 569 (Mo.1965) (quoting Restatement (Second) of Torts § 46, comment (d)).
The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests....
Boes, 768 S.W.2d at 207 (quoting Restatement, comment (e)).
The plaintiff in the case now before the Court has alleged two kinds of conduct. Paragraph one of Count III realleges certain allegations contained in Counts I and II. The allegations borrowed from Count I involve defendants' alleged blatant acts of sexual discrimination and harassment. It may be that the alleged acts of blatant sexual harassment and sexual discrimination would constitute "extreme and outrageous" conduct. Plaintiff, however, did not rely on the alleged instances of overt sexual harassment and discrimination. Rather, plaintiff has relied on allegations of conduct which, on their face, do not constitute sexual discrimination or harassment. The conduct which plaintiff argues is "extreme and outrageous" is contained in paragraphs 2 and 3 of Count II:
2. By reason of the foregoing acts of Defendants [the sexually dicriminatory and harassing acts alleged in Count I], Plaintiff was subjected to the following: numerous meetings with Defendants, complaints about her performance, denial of promotion, and intolerable work conditions.
3. Defendant fabricated complaints about Plaintiff and directed others to do likewise.
Plaintiff was allegedly denied a promotion and transfer; was given long lists of work to do but little time in which to accomplish the work; and was berated, insulted, threatened and belittled.
Nevertheless, the Court finds that plaintiff has raised a genuine question as to whether defendants' conduct was "so outrageous in character, and so extreme in *681 degree, as to go beyond all possible bounds of decency, and [whether it should] be regarded as atrocious, and utterly intolerable in a civilized community." Frye, 671 S.W.2d at 319. Plaintiff alleges that defendant's conduct was "by reason of" the overt acts of harassment and discrimination. Viewed as subtle forms of sexual harassment and discrimination, this Court cannot say, as a matter of law, that defendants' conduct was not "extreme and outrageous."
Plaintiff has produced affidavits of former female Safeway employees who complain of sexual discrimination by defendants. This case involves allegations of blatant sexual discrimination and harassment, as well as these more subtle forms of sexual discrimination. Plaintiff's affidavits which attest to these subtle forms of discrimination have raised a genuine issue of material fact, and it will be for a jury to decide both whether the alleged conduct occurred and whether it was "extreme and outrageous."
Therefore, it is hereby ORDERED that:
(1) plaintiff's motion for reconsideration is GRANTED;
(2) because plaintiff has demanded a jury trial on all issues, that plaintiff brief, within six (6) days of the date of this Order, why her Title VII claim should be tried by a jury; defendants shall have an additional three (3) days to respond to any suggestions filed by plaintiff on this issue;
(3) that this case be set for trial on Thursday, November 16, 1989, at 9:00 a.m., in Courtroom No. 8, 811 Grand Avenue, Kansas City, Missouri.
IT IS SO ORDERED.
NOTES
[1] In Count I of plaintiff's complaint, paragraph 3 alleges that plaintiff's employment with defendant continued until December 1986. Paragraph 5 alleges that plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in March 1987 and amended it in November 1987. Plaintiff has provided the Court with the EEOC charge and the amendment, both of which indicate that plaintiff resigned on December 27, 1986. Therefore, the Court will treat December 27, 1986 as the date of resignation and not December 27, 1987 as alleged in Paragraph 7 of Count I in plaintiff's complaint.