**Elaine and Guy THOMAS, et al., Plaintiffs,**

v.

**FAG BEARINGS CORPORATION, INC. and Fag Kugelfischer Georg Schaefer KGaA, Defendants.**

No. 92–5070–CV–SW–8.

United States District Court, W.D. Missouri, Southwestern Division.

April 6, 1994.

John M. Parisi, Bobbie R. Bailey and Lynn R. Johnson, Shamberg, Johnson, Bergman & Morris, Chartered, Overland Park, KS, Kenneth B. McClain, Gregory Leyh, Independence, MO, John M. Klamann, Payne & Jones, Overland Park, KS, Michael A. Gould, Raaji Deen Kanan, Gould & Duchardt, North Kansas City, MO, for plaintiffs.

David Field Oliver, M. Jan Day, Smith, Gill, Fisher & Butts, Kansas City, MO, Eric S. Aronson, John M. Scagnelli, Whitman & Ransom, Newark, NJ, for defendants.

## MEMORANDUM OPINION AND ORDER

STEVENS, Chief Judge.

This matter is before the Court on the following motions: plaintiffs' amended motion for class certification and defendant FAG Bearing's motion for partial summary judgment on plaintiffs' claims of mental anguish, fear of cancer, increased risk of cancer and medical monitoring.

### I. Motion for Class Certification

■ In order to maintain a class action, a proposed class must meet the prerequisites of numerosity, commonality, typicality and adequate representation as provided for in Fed.R.Civ.P. 23(a). However, those elements are "necessary, but not sufficient conditions for a class action." Advisory Committee notes to Rule 23. In addition to satisfying the four elements in Rule 23(a), the Court must find that a class is an appropriate vehicle to resolve this dispute. The Federal Rules of Civil Procedure outline three factual situations in which a class action is appropriate. See Fed.R.Civ.P. 23(b)(1)–(3). Since, as discussed below, the Court finds that plaintiffs cannot satisfy any of the scenarios under Rule 23(b)(1)–(3), the Court need not address the four prerequisite factors found in Rule 23(a).

Plaintiffs submit that the proposed class should be certified under either Rule 23(b)(2) or 23(b)(3). Rule 23(b)(2) provides that a class is an appropriate mechanism where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Such definition "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Advisory Committee notes to Rule 23(b)(2).

■ Plaintiffs assert three types of relief that would satisfy Rule 23(b)(2). First, plaintiffs claim that the response costs under CERCLA are essentially equitable in nature and qualify as "injunctive" or "declaratory" relief. While some courts may have stated that CERCLA response costs are equitable in nature, this does not change the fact that the relief sought by plaintiffs in this case is predominantly money damages. An award of costs incurred in response to contamination cannot be construed otherwise. This is not a sufficient basis for a class under Rule 23(b)(2).

Even if the Court were to find that CERCLA damages satisfy the rule, the claims of the representatives would not be typical of the other class members. Of the named representatives, the Village of Silver Creek alleges response costs of approximately $534,000, while the other named representatives either allege response costs under $100 or nothing at all. Some named plaintiffs may not even have claims under CERCLA, see infra, while those who do will have differing claims. The Court finds that the claims of the class representatives are not typical of the rest of the class.

■ Second, plaintiffs request injunctive relief under RCRA. They seek to have the court order FAG Bearings to cease and desist from all future releases of TCE.[1] Since FAG Bearings voluntarily stopped using TCE in 1981 and has not used it since, it is unlikely that the injunctive relief requested under RCRA is the "raison d'etre" of plaintiffs' lawsuit, and has no purpose other than to serve as a basis for attorney fees. This relief is clearly incidental to the monetary relief requested, if not altogether unneces-

---

1. The RCRA count also requests attorney fees.

sary. For that reason, this is not a sufficient ground on which to certify this proposed class.

■ Finally, plaintiffs argue that class action treatment is appropriate because they seek future medical monitoring. While plaintiffs seek to couch such damages in the guise of injunctive relief for the purposes of this motion, their complaint requests "the future costs of medical monitoring." Such costs are nothing more than "compensation for necessary medical expenses reasonably anticipated to be incurred in the future." *Elam v. Alcolac*, 765 S.W.2d 42, 209 (Mo.Ct.App.1988), *cert. denied* 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989). Absent anything more than an exchange of money, as requested by plaintiffs, these damages cannot be injunctive in nature. They are simply another element of tort damages. *Werlein v. United States*, 746 F.Supp. 887, 895 & 904 (D.Minn.1990), *vacated in part on other grounds*, 793 F.Supp. 898 (D.Minn.1992). Since this claim is not for injunctive relief, it cannot form the basis of a class under Rule 23(b)(2). *See Brown et al. v. S.P.E.T.A. et al. (Paoli Railyard PCB Litigation*, 1987 WL 9273, at *11, *14, 1987 U.S. Dist. LEXIS 5095, at *34 (April 8, 1987).

Next, plaintiffs assert that the class should be certified under Rule 23(b)(3) because

the questions of law or fact common to the members predominate over any questions affecting only individual members, and that a class is superior to other available methods for a fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). In making this determination, the court is to consider the interest of individual plaintiffs in controlling their own litigation, the nature and extent of other litigation already commenced by class members, the desirability of concentrating the litigation in this court, and the difficulties likely to be encountered. *Id.*

The Advisory Committee notes that

a "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages, but also of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

Notes of Advisory Committee to Fed. R.Civ.P. 23(b)(3).

■ In the present case, while there are undoubtedly common issues of law and fact, such as whether FAG Bearings released TCE into the groundwater, the individual issues of causation and damage so overshadow those in numerosity and complexity to render a class action unhelpful. *See Paoli Railyard PCB Litigation, supra*, at *10, *14, at 29–32.

The Court anticipates that plaintiffs' proof of causation, if offered consistently with the Court's February 10, 1994 opinion, will require individualized proof for each plaintiff. As an example, a test of the well water of nominal plaintiffs Steven Lee and Rebecca Luebber failed to disclose the presence of TCE. Not only does this indicate that their proof of contamination will be different from other plaintiffs, but it underlines the complex nature of hydrogeology. Because the results vary markedly from well-to-well, expert testimony on the actual source of contamination for each well may be required.

Assuming causation is proved, each plaintiff must prove entitlement to damages. The measure of damages is dependent almost exclusively on individual factors. As discussed below, all medical damages (mental anguish, cancerphobia, increased risk of cancer and medical monitoring) require proof of individual injury. Other damages claims, such as CERCLA response costs, diminution in property value, loss of use and enjoyment, and annoyance, would also require individualized proof. This would start hundreds or thousands of individual mini-trials on complex causation and damages issues, while the only benefit of a class would be that the ruling of several common, but not particularly daunting issues, would be made applicable to the entire class. The Court does not believe that result is consistent with the language or spirit of Rule 23(b)(3)(C), (D). Since the Court finds that a class is not a superior, or even

desirable mechanism in this case, plaintiffs' argument that the class should be certified under Rule 23(b)(3) is rejected.

The Court finds that certification of plaintiffs' proposed class is not appropriate under any of the provisions of Fed.R.Civ.P. 23(b). Accordingly, plaintiffs' motion for class certification will be denied.[2]

*II. FAG Bearings' Motion for Summary Judgment on Mental Anguish, Increased Risk of Cancer, Fear of Cancer, and Medical Monitoring.*

### Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ If a party is unable to make a sufficient showing to establish the existence of some essential element of its case upon which it will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ A party seeking summary judgment bears the initial burden of demonstrating to the court that an essential element of the nonmoving party's case is lacking. *Id.* The burden then shifts to the nonmoving party to come forward with sufficient evidence to demonstrate that there is a factual controversy as to that element, or to explain why such evidence is not currently available. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(e). If the nonmoving party fails to respond, summary judgment, if appropriate, shall be entered against that party. Fed.R.Civ.P. 56(e).

■ The standard for determining whether a factual dispute is genuine is the same as the standard applied to motions for a direct-ed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2511.

The "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).

*Id.* at 251, 106 S.Ct. at 2512. The standard under both is whether the evidence is sufficiently at odds as to require a jury to decide, or whether the case is so one-sided that one party must prevail as a matter of law. *Id.*

If [a party] in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict.

*Id.* at 251, 106 S.Ct. at 2512. Therefore, the standard on this motion is whether the plaintiffs have demonstrated that there will be evidence which would allow a reasonable jury to find in their favor on these claims.

■ The facts must be viewed in the light most favorable to the nonmoving party, who must be given the benefit of all reasonable inferences which may be made from the facts disclosed in the record. *Adickes v. S.H.*

---

**2.** While it is true that some individuals may not have the financial incentive to bring a separate action for the TCE contamination, some others, such as Shannon Lewis, whose case this Court remanded last year, have done so. The Court believes that those who have incurred significant injury will not hesitate to bring suit on their own behalf.

*Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Raschick v. Prudent Supply, Inc.,* 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988).

In applying the Supreme Court's standard for summary judgment, this Court is guided by the following language from *Celotex Corp. v. Catrett:*

> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose....
>
> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims or defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing those claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

477 U.S. at 323–27, 106 S.Ct. at 2553–55.

## A. Mental Anguish

To recover for mental anguish, the condition must be medically diagnosable and of sufficient severity to be medically significant. *Bass v. Nooney,* 646 S.W.2d 765, 772 (Mo. banc 1983); *Davis v. Shelton,* 710 S.W.2d 8, 10 (Mo.Ct.App.1986). A condition that is medically significant is one that is severe enough to require medical attention. *Id.* at 773 n. 4; *see also Greco v. Robinson,* 747 S.W.2d 730, 735 (Mo.Ct.App.1988). "Mere upset, dismay, humiliation, grief and anger" do not suffice. *Davis v. Shelton,* 710 S.W.2d at 11 (quoting *Bass v. Nooney,* 646 S.W.2d at 773 n. 4). Where no medical evidence is offered to substantiate individual's claims of anguish, summary judgment is proper. *Greco v. Robinson,* 747 S.W.2d 730 (Mo.Ct.App.1988). Furthermore, where medical treatment is not sought until the eve of summary judgment, the claim of anguish may not be "of sufficient severity to be medically significant." *Davis v. Shelton,* 710 S.W.2d at 11.

In response to FAG Bearings' request for admissions, plaintiffs admitted that prior to the filing of this suit, none of them had been "treated, examined or otherwise evaluated ... by any mental health care professional for the specific purpose of determining whether they suffered annoyance, inconvenience, trouble, vexation, loss of peace of mind, and/or fear of contracting future illness or disease as a result of their exposure to TCE." Response to FAG Bearings' first request for admissions, attached to FAG Bearings' motion for summary judgment as Exhibit D. All plaintiffs, with the exception of Elaine Moretz, Earle Doman, and Dalene Doman, also admitted that they had not been so examined since the suit was filed.

In a supplemental brief filed April 4, 1994, plaintiffs include psychological evaluations of Elaine Moretz, Earle Doman and Dalene Doman conducted by Elizabeth Penick, Ph.D. on January 8, 1994. Plaintiffs do not explain why these evaluations, or reference to them were not included in the suggestions in opposition to FAG Bearings' motion for summary judgment that were filed on March 11, 1994. In those suggestions, plaintiffs relied solely on reference to Dr. Kilburn's group study and references to future depositions of mental health experts. If the experts referred to included Dr. Elizabeth Penick, plaintiffs should have so stated and included the evaluations they now wish to have included as part of the record on this motion.

The psychological evaluation of Earle Doman included a diagnosis of "mild-to-moderate stress reaction" that the psychologist attributes largely to the discovery of the TCE contamination.

Dr. Penick's evaluation of Dalene Doman included diagnoses of "adjustment disorder

with mixed anxiety and depressive features," "major depression in full remission," and "simple phobia, mild, chronic." Dr. Penick attributes the adjustment disorder to the well contamination. That disorder was diagnosed because of "increased levels of anxiety, tension and worry." The major depression and the phobia do not seem to be related to the well contamination.

Elaine Moretz was diagnosed with "post-traumatic stress disorder" and simple phobia. The phobia is not related to the contamination. The disorder was attributed mostly to the discovery of contamination, although Moretz has undergone a divorce and a cancer scare within the last two years.

All three plaintiffs visited Dr. Penick on the same day at the direction of their lawyers.

Because plaintiffs did not seek medical attention until instructed to do so by their lawyers, their condition does not appear to have been so significant in their eyes that it required medical attention. Although they were each diagnosed with conditions of differing types, none sought treatment of their condition in the past and do not appear to have plans to do so in the future. At their depositions in December, these plaintiffs indicated they had no plans to seek the help of mental health professionals based on their exposure to TCE.

Upon review of the psychological evaluations, although there may be diagnoses attributable in part to TCE exposure that are medically diagnosable, the Court finds that those conditions are not "medically significant."[3] The Court gives great weight to the fact that these diagnoses come very late in the game, see Davis v. Shelton, 710 S.W.2d at 11, and the fact that plaintiffs did not seek evaluation until directed to do so by their attorneys. Furthermore, the diagnoses of the Domans and their subjective complaints in their deposition testimony, do not surpass the "mere upset, dismay, humiliation, grief and anger" that Bass v. Nooney, supra, said does not suffice to establish a claim. Earle Doman deposition, at 33–34, Dalene Doman deposition, at 26–28. Elaine Moretz's diagnosis, though more substantial, is made less significant in its relation to the TCE exposure because of the other severe stresses present in the past two years.

The depositions of the other plaintiffs show that they are worried and concerned about their exposure, but have not been treated or diagnosed with any mental health condition based on those worries and concerns.

In this case, the three plaintiffs who have sought mental health evaluation cannot show that their complaints are medically significant, and no other plaintiff has offered medical evidence to show that their anguish is either medically diagnosable or medically significant. Furthermore, the subjective complaints of anguish alleged by plaintiffs in their depositions are not, under Missouri law, "medically diagnosable" or "of sufficient severity to be medically significant." Bass v. Nooney, 646 S.W.2d at 773 n. 4 ("Mere upset, dismay, humiliation, grief and anger" do not suffice); Greco v. Robinson, 747 S.W.2d 730, 735 (Mo.Ct.App.1988) (nervousness, headaches and stomach problems not sufficient to support claim); Hayes v. Dunn, 709 S.W.2d 164 (Mo.Ct.App.1986); Davis v. Shelton, 710 S.W.2d 8, 11 (Mo.Ct.App.1986) (muscle twitching, weakness, nightmares and loss of sleep insufficient).

Plaintiffs assert that depositions of their mental health experts that have not been taken will reveal evidence to satisfy the Bass v. Nooney test. Plaintiffs do not need deposition testimony of their own experts before they can present facts in opposition to a summary judgment motion. They can obtain such facts by affidavit. Fed.R.Civ.P. 56(f). Surely by the time plaintiffs' suggestions were filed, plaintiffs knew the nature and substance of their experts' opinions and could prepare affidavits setting forth those opinions and the facts on which they are based. Also, as will be discussed below, this Court will require individualized medical proof for all damage claims. Generalized medical testimony as to group diagnoses is not suffi-

---

**3.** The Court in no way intends to denigrate the diagnoses of these plaintiffs. However, the Court must determine whether those diagnoses satisfy the requirements of Missouri law. Due to the timing and nature of these evaluations, the Court finds that they do not.

**1408**

cient. The supplemental brief contains no other mental health professional evidence and the Court will assume that no further individual evaluations have been done. Since it does not appear that these as-yet-undeposed mental health experts have examined individuals, the Court need not wait for their opinions on this issue.

Accordingly, since plaintiffs cannot prove the necessary elements of a claim for mental anguish, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. Fear of Cancer

 A claim for fear of contracting cancer in the future is subject to the same standard of proof as mental anguish, *supra*. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 866–67 (Mo.Ct.App.1985) (fear of cancer claim arising out of radiation exposure), *cert. denied*, 476 U.S. 1176, 106 S.Ct. 2903, 90 L.Ed.2d 989 (1986). Plaintiffs must prove that the distress resulting from their fear of cancer is medically diagnosable and sufficiently severe to be medically significant. *Id.* at 867 (citing *Bass v. Nooney*, 646 S.W.2d at 772–73).

No plaintiff, even those diagnosed by Dr. Penick, suffers a medically diagnosable condition related primarily to their fear of contracting cancer. Since no plaintiffs can meet the standard articulated in *Bennett*, summary judgment is appropriate as to this claim.

4. In a toxic tort case where the plaintiffs suffered a multitude of present injuries, the court in *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo.Ct.App.1988), *cert. denied*, 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989), declined to adopt a broad reading of the *Bennett* court analysis of increased risk of cancer. Instead, the court discussed two different theories of increased risk of cancer. One, (the *Bennett* view) treats the damages as the future consequences of present injury; the other, which does not require manifestation of present injury, compensates for the cost of the injury proportionately reduced by the probability that the injury will not occur. Either theory requires proof of quantified risk. Since there was no such proof, either claim would fail and the *Elam* court did not have to choose between them.

### C. Increased Risk of Cancer

 A claim for increased risk of cancer is simply an element of damages seeking compensation for future consequences of present damage. Like all other elements of damage in Missouri, "future damages in a personal injury action are not compensable unless reasonably certain to occur." *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d at 867. In order to recover, plaintiffs must prove that the risk of contracting cancer (or any other disease) is a reasonable certainty. *Id.*[4] To show that a risk is a reasonable certainty, there must be evidence of a quantified risk—medical evidence must establish that an individual plaintiff will more likely than not develop cancer. *Elam v. Alcolac, Inc.*, 765 S.W.2d at 208 (actionable if "the toxic exposure has induced some biological manifestation from which the anticipated cancer is reasonably certain to occur—as quantified by expert testimony as a probability of occurrence greater than 50 percent."). Evidence of an "unquantified" risk of cancer is not probative. *Id.*

Therefore, this element of damage requires proof of actual present injury and medical evidence that future development of cancer is reasonably certain to occur.

 FAG Bearings contends that no plaintiff has any evidence of any present physical injury. Plaintiffs argue that a study by Dr. Kaye H. Kilburn is evidence of physical injury. Plaintiffs also argue that physical injury should be interpreted very broadly to

However, the *Bennett* court, four years earlier, expressly rejected the second theory:

> Damages based on mere mathematical probabilities significantly undercompensate those who actually develop cancer and are a windfall to those who do not. No acceptable definition of justice would contemplate such a result.

*Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d at 866. The court held that the mere increased risk of cancer alone is not a present injury. This Court believes that *Elam* dictum aside, the *Bennett* approach, requiring present injury and reasonably certain future consequences, is the proper application of Missouri law to this developing area of tort law. *See also Amendola v. Kansas City Southern Ry. Co.*, 699 F.Supp. 1401, 1407 (W.D.Mo.1988) (requiring actual injury for fear of cancer under F.E.L.A.).

include an invasion of plaintiffs' interests by TCE.

### Dr. Kilburn's Study

During depositions of the nominal plaintiffs, no plaintiff was able to identify any physical injury sustained as a result of the TCE contamination. In response to FAG Bearings' requests for admissions, plaintiffs admitted that they had not sought medical evaluation, examination or treatment of any sort for the purpose of determining whether they had suffered physical injury as a result of the contamination.[5] Plaintiffs also stated that "at the present time, plaintiffs do not have sufficient information to determine whether their exposure to TCE has caused them to suffer any 'physical injury.'" Response to FAG Bearings' first request for admissions, attached to FAG Bearings' motion for summary judgment as Exhibit D.

On February 19–20, 1994, Dr. Kilburn, a professor of medicine at the University of Southern California School of Medicine, examined a group of 82 potential class plaintiffs for the purpose of determining whether they, as a group, have neurobehavioral impairments.[6] The doctor and a group of his associates subjected the 82 residents (72 adults and 10 children) to a battery of cognitive and neurological tests, such as tests measuring reaction time, blink reflex latency, sway balance, memory recall and color vision. The tests also included questions about the subjects' medical symptom histories and their exposure to various types of situations. The test did not examine each persons' degree of exposure to TCE. Using statistical analysis, Dr. Kilburn then compared the results of the tests of Joplin residents to the results of tests he performed on a group of 117 individuals outside of Phoenix. This Phoenix group was considered to be a referent (control) group against which the Joplin tests results could be measured. As a result of the comparison, Dr. Kilburn concluded that the Joplin group suffered impairments resulting from TCE exposure:

> I would conclude that the exposed population [the Joplin group] was abnormal in a number of ways that are statistically important, and, furthermore, they approach statistical significance in several other areas.

Kilburn deposition, at 102. Dr. Kilburn further testified that the residents of Silver Creek and Saginaw Village "have suffered impaired function performance" as a result of TCE contamination, and that the impairment is an "adverse health effect." Kilburn deposition, at 174.

In the course of the study, the medical records of the subjects were not consulted, no clinical evaluations (with the exception of the tests performed by Kilburn's group) were done, and no individual conclusions were reached. Dr. Kilburn acknowledged that his epidemiological study was not determinative of any individual's condition: "[e]pidemiology isn't a science of going from groups to one. It's a science of talking about group behavior. Clinical medicine deals with ones, and it would take some combination of the two to come up with some agreement for each individual." Kilburn deposition, at 171.

Allowing proof of group harm as a substitute for individual harm would not serve any notion of justice. Uninjured plaintiffs would receive windfalls, while plaintiffs who have now, or later develop, actual injuries would be undercompensated. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d at 867.[7] Therefore, proof of actual individual injury is necessary. To the extent Dr. Kilburn's study is not evidence of individual harm, it is not relevant and not admissible.

Dr. Kilburn's study may indicate that this group of 82 individuals, some of whom may

---

**5.** Plaintiffs did indicate they may obtain such attention in the future. The responses were dated February 10, 1994.

**6.** It is unclear from the deposition testimony whether each nominal plaintiff was a member of the group tested. The group consisted of volunteers from the proposed class. Kilburn deposition, at 16.

**7.** Although the issue cannot be resolved by existing deposition testimony, is reasonable to assume that the results of Joplin test included some individuals who performed better and some who performed worse than the referent group.

be nominal plaintiffs, suffer certain impairments in function. However, the study does not, and by Dr. Kilburn's own admission, cannot identify physical injury in any individual that is a party to this lawsuit. Viewed in combination with plaintiffs' admissions that they have not been examined, evaluated or treated to determine whether they suffer any injury due to TCE exposure, and that they do not have sufficient information to determine whether they suffer such injuries, it is clear that plaintiffs cannot prove the present physical injury element of this claim. Without proof of this essential element, all other facts are immaterial and all plaintiffs' claims for increased risk of cancer must fail. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### D. Medical Monitoring

A claim for the future costs of medical monitoring is similar to that for increased risk of cancer. An increased risk of cancer claim compensates now for later probable injury, while a medical monitoring claim pays now for costs of detecting later injury.

■ The future costs of medical monitoring are compensable as "necessary medical expenses reasonably certain to be incurred in the future." *Elam*, 765 S.W.2d at 209; *Werlein v. United States*, 746 F.Supp. 887, 904 (D.Minn.1990), *vacated in part on other grounds*, 793 F.Supp. 898 (D.Minn.1992). Entitlement to the costs of future medical monitoring requires plaintiff to prove actual present injury and an increased risk of future harm. *Werlein*, 746 F.Supp. at 904; *Ball v. Joy Technologies, Inc.*, 958 F.2d 36, 39 (4th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 876, 116 L.Ed.2d 780 (1992). The *Elam* court did not require the same type of quantified risk necessary for the increased risk of cancer claim. Instead, it allowed a medical opinion that each plaintiff suffered a

significant risk of cancer as a basis for the claim. *Elam*, 765 S.W.2d at 208–09.

■ To prove medical necessity, each plaintiff must show, by individual proof, that factors such as the nature and extent of their exposure, the seriousness of their present injury, the increased risk of disease, the seriousness of the diseases that are possible, and value of early of diagnosis of those diseases, dictate that medical surveillance, beyond that which is normal, will be necessary in the future. *See Ayers v. Jackson Township*, 106 N.J. 557, 525 A.2d 287, 312 (1987). In keeping with Missouri's standard of proof for future damages, the monitoring must be probably, not just possibly, necessary. *cf. Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d at 867; *See In re Paoli Railyard PCB Litigation*, 916 F.2d 829 (3d Cir.1990).

■ Just as plaintiffs cannot present any evidence of actual injury to any individual in support claims of increased risk of cancer, they cannot present any evidence of actual injury to support claims for future costs of medical monitoring. Furthermore, while Dr. Kilburn did express his opinion that medical monitoring for the plaintiffs would be an "excellent idea," that assessment was not based on any consideration of any individual case, their medical history, their medical prognosis, or their exposure to TCE.[8]

Plaintiffs cannot establish that the future costs of medical monitoring are medically necessary. Accordingly, summary judgment must be granted as to these claims as well.[9]

Although the Court is foreclosing plaintiffs from recovering on any of these four theories in this lawsuit, it does not wish to preclude plaintiffs from ever recovering should they develop physical injuries attributable to this TCE contamination. Exposure to potentially hazardous substances is certainly a serious event and those injured should be compen-

---

**8.** There are also questions as to whether medical monitoring would be of any benefit since there are only "preliminary ideas" on the treatment of TCE-related impairments. *See Paoli Railyard PCB Litigation*, 916 F.2d 829, 852 (3d Cir.1990), *cert. denied* 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991). Also, Dr. Kilburn indicates that a central value of the monitoring would be to provide the medical community with insight

into TCE exposure. Although that goal is laudable, it is not the proper reason for imposition of this type of relief.

**9.** While plaintiffs are not entitled to medical monitoring costs in this present action, they may be available at the request of the government under 42 U.S.C. § 9604(i)(1)(D), (E).

sated. However, that compensation must be made in accordance with accepted legal principles. Either because injuries are not presently apparent or because plaintiffs were unable to discover evidence of such injuries, they are unable to recover at this time under Missouri law. At some future time, when such evidence is available or such injuries are apparent, the Court intends that they be able to bring such claims without suffering preclusive effects from this Order.

Accordingly, it is

ORDERED that plaintiffs' motion for class certification is DENIED. It is further

ORDERED that defendant FAG Bearings' motion for summary judgment on nominal plaintiffs' claims for mental anguish, increased risk of cancer, fear of cancer, and the costs of future medical monitoring is GRANTED. These claims are to be dismissed without prejudice.