Sandra C. KENNEDY, Plaintiff-Respondent,

v.

WASHINGTON NATIONAL INSURANCE
COMPANY, Defendant-Appellant.

Court of Appeals

*No. 86–0795. Submitted on briefs October 14, 1986.—Decided
January 13, 1987.*

(Also reported in 401 N.W.2d 842.)

For defendant-appellant, Washington National Insurance, briefs were submitted by *Thomas D. Bell*, of *Doar, Drill & Skow, S.C.*, of New Richmond.

For plaintiff-respondent, Sandra C. Kennedy, a brief was submitted by *John F. Wilcox*, of *Wilcox & Wilcox*, of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.  The sole issue on appeal is whether the term "accidental death" in Washington National Insurance Company's life insurance policy includes death by autoerotic asphyxiation. The trial court concluded in its summary judgment that the death by autoerotic asphyxiation was accidental. We agree.

The parties stipulated to the facts. On the afternoon of October 24, 1984, Richard Kennedy, a practicing orthopedic surgeon, engaged in an autoerotic sexual act in the basement bathroom shower of his home. Before engaging in this act, he place a rope around his neck to reduce the supply of oxygen to his

brain, short of reaching unconsciousness, to heighten the sexual pleasure during masturbation. As a result of his actions, Kennedy died from strangulation. He was found without clothes, except for a pair of socks, hanging by a rope from the shower head. Various pictures of the lower portion of animals and nude males were displayed on a wall near the shower. The investigating authorities initially suspected suicide, but after further examination they concluded that Kennedy's death was accidental. Washington National concedes that Kennedy did not intentionally kill himself.

Washington National insured Kennedy under a group life insurance policy that provided a life insurance benefit of $50,000 and an additional accidental death benefit of $50,000. It paid the first $50,000 to his surviving wife, but argues that the death was not accidental because it was foreseeable by a person with Kennedy's training that death could follow from strangulation if anything went wrong. It also argues that the term accidental death does not include death resulting from an act when the insured voluntarily exposed himself to a known and unnecessary risk of death.

The word "accidental" is not defined in the insurance policy.[1] The policy's accidental death en-

---

[1]The accidental death coverage provided:

Accidental Death and Dismemberment Benefits. If injury shall result in one of the following total losses within 90 days from the date of the accident, Washington National will pay indemnity for such loss as specified below.

Accidental Death ... The Principal Sum "Injury" is defined as:

dorsement contains four limitations or exclusions, none of which is applicable in this case.[2]

Applying a given rule of law to stipulated facts is a question of law. *Kramer v. Horton,* 128 Wis. 2d 404, 414, 383 N.W.2d 54, 58 (1986). We owe no deference to a trial court's resolution of issues of law. *Id.* The construction of words and clauses in an insurance policy is a question of law that is properly decided on motion for summary judgment. *Jones v. Sears Roebuck & Co.,* 80 Wis. 2d 321, 327, 259 N.W.2d 70, 72 (1977).

In *Caporali v. Washington National Insurance Co.,* 102 Wis. 2d 669, 765–76, 307 N.W.2d 218, 221 (1981) (quoting *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414, 417 (1975)), our supreme court restated the standards for construction of terms in insurance policies:

> Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a

Injury as used in this Benefit means an accidental bodily injury sustained by the Insured Person while this Benefit is in force with respect to the Insured Person.

[2]The accidental death endorsement of the policy contains four limitations or exclusions, these being losses resulting from: (1) war; (2) suicide; (3) disease or infection, except from a wound accidentally sustained; and (4) accidental injury while flying other than on a commercial flight.

> reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. This is a restatement of the general rule that ambiguous contracts are to be construed most strongly against the maker or drafter. Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction.

Public policy favors finding coverage where the insurance policy terms permit it. *Western Casualty & Surety Co. v. Budrus*, 112 Wis. 2d 348, 351, 332 N.W.2d 837, 839 (Ct. App. 1983).

Initially, Washington National argues that Kennedy should have foreseen his death when he participated in this autoerotic act. Consequently, it concludes the death cannot be accidental. We disagree.

Wisconsin has eliminated foreseeability as determinative of whether the injury or death was accidental. In *Wiger v. Mutual Life Insurance Co.*, 205 Wis. 95, 105–06, 236 N.W. 534, 538–39 (1931), a case also involving double indemnity, the court adopted the "average man" test in interpreting the term "accidental means." It held that:

> To eliminate from the definition of "accidental means" all cases where the injury happened as the natural or foreseeable result of a force or event voluntarily set in motion by the insured may have some scientific justification, but is contrary to the common understanding of the term and tends unfairly to limit such policies to cases where the insured is guilty of no negligence.

Wiger had died of carbon monoxide poisoning while he was in an enclosed garage with the car motor

running. The court acknowledged that Wiger knew the effects and properties of carbon monoxide gas and could have foreseen that running the car's engine in the enclosed garage might result in carbon monoxide poisoning. It concluded that his death was accidental.

Our supreme court reaffirmed the average man test in *Stoffel v. American Family Life Insurance Co.*, 41 Wis. 2d 565, 570, 164 N.W.2d 484, 487 (1969), when it stated that

> Wisconsin has elected to follow the "average man test" in defining the word "accident" rejecting the narrower definition that requires an unforeseen event as well as an unanticipated result to constitute an accidental happening.

In *Stoffel*, the insured died from a massive hemorrhage caused by the strain of lifting a heavy wagon. The court applied the average man test and held that the insured's death was accidental within the meaning of the policy, it being the direct and unexpected result of the act or incident involved.

Next, we consider Washington National's argument that Kennedy's death was not "accidental" because he voluntarily exposed himself to a known high risk of death. Words used in an insurance contract should be given their common, everyday meaning. *Schmidt v. Luchterhand*, 62 Wis. 2d 125, 133, 214 N.W.2d 393, 396 (1974). The American Heritage Dictionary of the English Language at 8 (1976), defines accident as an "unexpected and undesirable event; a mishap" and accidental as "[o]ccurring unexpectedly and unintentionally; by chance." The Webster's New Collegiate Dictionary at 7 (1977), defines accident as: "an event occurring by

chance or arising from unknown causes," and accidental as "occurring unexpectedly or by chance" or "happening without intent or through carelessness."

Washington National analogizes Kennedy's death to the death of one who participates in Russian Roulette with a loaded weapon. Other jurisdictions conclude that no "accident" occurs where injury or death results from participation in a highly dangerous act, such as Russian Roulette. *See Koger v. Mutual of Omaha Ins. Co.*, 163 S.E.2d 672, 675 (W. Va. 1968), and *Thompson v. Prudential Ins. Co. of America*, 66 S.E.2d 119, 122 (Ga. App. 1951). Those jurisdictions reason that such reckless abandon and exposure to a known and obvious danger cannot be said to have been accidental. One engaging in such a bizarre act as Russian Roulette knows that he is courting death or severe injury, and will be held to have intended such obvious and well known results if he is killed or injured. *Thompson*, 66 S.E.2d at 123–24. Washington National contends that we should apply this same rationale to Kennedy's autoerotic act. We disagree. Engaging in this autoerotic act, although risky, does not mean that death is highly probable or likely as it is in Russian Roulette.

Two of the three jurisdictions that have dealt with autoerotic asphyxiation have concluded that the death was not accidental. *See International Underwriters, Inc. v. Home Insurance Co.*, 662 F.2d 1084 (4th Cir. 1981); *Runge v. Metropolitan Life Insurance Co.*, 537 F.2d 1157 (4th Cir. 1976); *Sigler v. Mutual Benefit Life Insurance Co.*, 506 F. Supp. 542 (S.D. Iowa 1981). *But see Connecticut General Life Insurance Co. v. Tommie*, 619 S.W.2d 199 (Tex. App. 1981) (appellate court sustained a jury's finding that death by autoerotic asphyxiation was an accident). Except for Texas, these

431

jurisdictions hold that death or injury does not result from an accident or accidental means where it is the natural result of the insured's voluntary act. ■

We agree with the proposition that if an insured does a voluntary act where the natural, usual, or expected result would cause injury or death, such death or injury would not be an accident in any sense of the word, legal or colloquial.

We recognize, therefore, that there are occasions when an insured participates in some act where serious injury or death is highly probable or an inevitable result. Under no circumstances can or should that conduct be termed accidental. It would defeat the very purpose or underlying function of accidental life insurance. However, the intentional or unnecessary exposure to risks, as well as the negligent creation of risks to one's own safety, does not prevent the result from being accidental. The customary expectation of a policyholder is that the injury or death is accidental if there is some reasonable basis for the belief that his conduct does not make the injury or death an expected result.

More is required than a simple showing that injury or death might result. It is only when the consequences of the act are so natural and probable that it can be said the insured, in effect, intended the result and it was therefore not accidental. It must be demonstrated in some way that he knew or should have known that his actions would probably result in his death. ■

Although Kennedy's act can be considered bizarre or unusual, we agree with the trial court that there is no evidence that Kennedy's death was highly proba-

ble, expected, or a natural result. He participated in this act solely for the purpose of seeking sexual gratification. All the circumstances surrounding the incident indicate that Kennedy would emerge from the experience alive and without injury. The trial court reasonably inferred from the displayed pictures found near Kennedy that he had done this same act on previous occasions. There was no evidence of depression or suicidal tendencies. He was a healthy, forty-five-year-old surgeon with no reason to harm himself. It was a foolish act involving some risk of injury or death, but it was not of such a nature that Kennedy knew or should have known that it probably would result in death. Death was not a normal expected result of this behavior.

Washington National could have easily protected itself by also excluding the insured's voluntary exposure to unnecessary danger from the policy's accidental death endorsement. Having failed to except such type of conduct in the policy, Kennedy's participation in this autoerotic act cannot defeat recovery. *See Shevlin v. American Mutual Accident Association*, 94 Wis. 180, 185, 68 N.W. 867 (1896).

We affirm the trial court's judgment that, under the terms of the insurance policy, Kennedy's death was accidental.

*By the Court.*—Judgment affirmed.