CURRAN COMPOSITES, INC. and Total Composites, Inc., d/b/a Cook Composites and Polymers Co., Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE CO., Defendant.

No. 93–1063–CV–W–8.

United States District Court, W.D. Missouri, Western Division.

Dec. 1, 1994.

Douglas P. McLeon, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for plaintiffs.

Robert T. Adams, Shook, Hardy & Bacon, Kansas City, MO, for defendant.

## ORDER

STEVENS, Chief Judge.

This diversity action springs from a dispute over the scope of coverage for environmental cleanup under comprehensive general liability and umbrella excess liability insurance policies issued to plaintiff by defendant. Plaintiff alleges that defendant insurance company breached those contracts. Defendant's motions for summary judgment and to stay discovery are before the court. For the reasons stated below, summary judgment is granted in favor of the defendant and the motion to stay discovery is dismissed as moot.

## I. BACKGROUND

Curran Composites ("Curran") owns and operates a resin production plant in Saukville, Wisconsin. Curran acquired the plant from Freeman Chemical Corporation ("Freeman") and inherited all of Freeman's rights and interests in the property. Liberty Mutual Insurance Company ("Liberty Mutual") provided general comprehensive liability and umbrella excess liability insurance coverage

to Curran and its predecessor in interest, Freeman, for much of the period from 1966 through 1988. Because all of the policies cannot be located, the exact dates of coverage are not clear.[1]

The process used in Freeman's resin production facility generated "reaction water," a liquid waste containing hazardous chemicals. In 1952, Wisconsin state officials notified Freeman that it could dispose of the hazardous reaction water in a dry well at the Saukville facility. Freeman did that until approximately 1965, when it began to dispose of the waste in an on-site incinerator.

In 1979, after Saukville residents complained of odors in their municipal water, the Environmental Protection Agency ("EPA") and the Wisconsin Department of Natural Resources ("WDNR") initiated an investigation. The EPA and WDNR determined that the reaction water stored in the dry well had migrated into the municipal water supply, causing significant groundwater contamination.

In August of 1987, Freeman notified Liberty Mutual of its claim to recover costs of investigating and remediating contamination caused by operations at the Saukville facility. In October of 1987, Freeman signed a consent order with the EPA and WDNR under the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6901 *et seq.* Freeman entered this order, which outlined its cleanup and reporting obligations, apparently as an attempt to minimize costs and avoid liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* commonly known as "Superfund." On August 2, 1989, Liberty Mutual informed Freeman that it had denied Freeman's claim for reimbursement of investigation and cleanup costs.

Plaintiff's two count complaint followed. In Count I, plaintiff alleges breach of contract. Plaintiff contends that the breach arises from (1) Liberty Mutual's failure to defend Curran, and (2) Liberty Mutual's failure to compensate Curran for cleanup and remediation costs. In Count II, plaintiff seeks a declaratory judgment defining Liberty Mutual's obligations under the insurance contracts.

Defendant moved for summary judgment, claiming that (1) defendant had no duty to defend because there was no lawsuit, and (2) the costs incurred by plaintiffs are not "damages" requiring reimbursement under the terms of the contract.

## II. STANDARD FOR SUMMARY JUDGMENT

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If a party is unable to make a sufficient showing to establish the existence of some essential element of its case upon which it will bear the ultimate burden of proof at trial, all other facts are necessarily immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986); *Thomas v. FAG Bearings Corp., Inc.,* 846 F.Supp. 1400, 1405 (W.D.Mo.1994). A defendant moving for summary judgment bears the initial burden of showing the court that an essential element of the plaintiff's case is lacking. *Celotex.* The burden then shifts to the plaintiff to show that there is a factual controversy as to that element, or to explain why such evidence is not currently available. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thomas,* 846 F.Supp. at 1405; Fed. R.Civ.P. 56(e). If the plaintiff fails to demonstrate that there will be evidence which would allow a reasonable jury to find in its favor, summary judgment should be granted for defendant. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12; *Thomas,* 846 F.Supp. at 1405.

---

1. Plaintiff claims that Liberty Mutual provided continuous coverage from 1966 through 1988, generally through policies of one year duration. Plaintiff is unable to locate all of the insurance policies required to substantiate this claim. Defendant claims that it issued comprehensive general liability policies to cover 12/31/72 through 1/1/88 and umbrella excess liability policies to cover 12/31/78 through 1/1/83 and 1/2/87 through 1/1/89.

Under Wisconsin law, construction of an insurance policy presents a question of law that may be decided on summary judgment. *Kennedy v. Washington Nat'l Ins. Co.*, 136 Wis.2d 425, 401 N.W.2d 842, 844 (Ct.App.1987). Therefore, in a claim alleging breach of an insurance contract, if by the plain language the terms of the insurance contract do not permit recovery, summary judgment for defendant is appropriate.

## III. DISCUSSION

At issue is whether the terms of the insurance contracts entitled plaintiff to a legal defense and/or reimbursement for cleanup and remediation expenses from defendant. In order to interpret properly the insurance contracts, the court must first determine which law applies. Defendant argues that Wisconsin law applies. Plaintiff suggests that Wisconsin should not apply, but fails to propose an alternative.

Plaintiff brings this claim under 28 U.S.C. § 1332, with jurisdiction based on diversity. A federal court sitting in a diversity case must apply the forum state's conflict of law rules. *Simpson v. Liberty Mutual Ins. Co.*, 28 F.3d 763, 764 (8th Cir.1994); *Wright v. Minter*, 736 F.Supp. 1024, 1025 (W.D.Mo. 1990). Accordingly, Missouri conflict of law rules govern here.

Missouri has adopted § 188 and § 193 of the Restatement (Second) of Conflict of Laws in casualty insurance cases. *Becker Metals Corp. v. Transportation Ins. Co.*, 802 F.Supp. 235, 237 (E.D.Mo.1992); *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348, 358 (Mo.App.1986). If the insurance contract does not specify which state's law applies, or if the policy insures risks located in a state other than Missouri, Missouri applies § 193. *Crown Center*, 716 S.W.2d at 358–59. Under § 193, unless some other state has a more significant relationship to the insurance contract, the law of the "principal location of the insured risk" applies.

The insurance policies in this case covered multiple manufacturing facilities located in several different states. Under § 193 comment (f), which addresses multiple risk insurance policies covering risks located in different states, each insured risk is treated as though it were insured by a separate policy. Accordingly, the law of the state in which the specific risk is located generally applies. *Crown Center*, 716 S.W.2d at 358–59. Because this case concerns waste from a single facility located in Saukville, Wisconsin, under Missouri's conflict of law rules, Wisconsin law applies. *See Becker*, 802 F.Supp. at 238; *Crown Center*, 716 S.W.2d at 358–59.

Wisconsin law provides that insurance policies shall be interpreted to carry out the true intentions of the parties. *Edgerton v. General Cas. Co.*, 184 Wis.2d 750, 517 N.W.2d 463, 476 (1994); *Kennedy v. Washington Nat'l Ins. Co.*, 136 Wis.2d 425, 401 N.W.2d 842, 844 (Ct.App.1987), *quoting Caporali v. Washington Nat'l Ins. Co.*, 102 Wis.2d 669, 307 N.W.2d 218, 221 (1981). Although a court will not create rights not in the contract, ambiguity in the contract is resolved in favor of the insured, *Kennedy*, 401 N.W.2d at 844, particularly when the ambiguity appears in an exclusionary clause. *Just v. Land Reclamation Ltd.*, 157 Wis.2d 507, 456 N.W.2d 570 (1990). Moreover, public policy favors finding coverage if the terms of the insurance contract permit such a finding. *Kennedy*, 401 N.W.2d at 844; *Western Casualty & Surety Co. v. Budrus*, 112 Wis.2d 348, 332 N.W.2d 837, 839 (Ct.App.1983).

However, when parties specifically contract to limit recovery, a court should not alter the contract to include remedies not contracted for. *Edgerton*, 517 N.W.2d at 477, *citing School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis.2d 347, 488 N.W.2d 82 (1992). When a plaintiff seeks remedies clearly beyond the scope of the insurance contract, the plaintiff's claim must be denied.

Pertinent provisions of the comprehensive general liability insurance policies Liberty Mutual provided to Curran read as follows:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A. bodily injury or
>
> Coverage B. property damage

to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The umbrella excess liability policies at issue contain the following language:

The Company will pay on behalf of the insured all sums in excess of the retained limit which the insured shall become legally obligated to pay, or with the consent of the company, agrees to pay, as damages, direct or consequential, because of:

(a) personal injury,

(b) property damage, or

(c) advertising injury or damage

with respect to which this policy applies and caused by an occurrence.

With respect to personal injury, property damage or advertising injury or damage covered under this policy (or which would be covered but for the insured's retention as stated in the declarations), but not covered under any underlying policy or any other insurance, the company will

(1) defend any suit against the insured seeking damages on account thereof, even if such suit is groundless, false or fraudulent' but the company may make such investigation and settlement of any claim or suit as it deems expedient.

Beginning in 1973,[2] the comprehensive general liability policies contained a pollution exclusion clause, which reads as follows:

This policy does not apply:

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liq-

uids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

An identical clause was included in the umbrella excess liability policies.

 Curran contends that a duty to defend has arisen under the insurance policies, but Curran does not specify what event triggered the duty. The policies state that Liberty Mutual shall "defend any *suit* against the insured seeking *damages*" (emphasis added). Neither the comprehensive liability policies nor the umbrella excess policies explicitly required Liberty Mutual to defend against an EPA investigation of the insured.

Under the terms of the policies, a duty to defend does not arise until a suit has been initiated. Recent environmental legislation has produced a flood of litigation concerning whether a federal or state demand for environmental cleanup constitutes initiation of a suit, yet there has been no definitive, nationwide resolution of whether and when the standard form general comprehensive liability policy imposes a duty to defend. *See* *Edgerton v. General Cas. Co.*, 184 Wis.2d 750, 517 N.W.2d 463, 47076–77 (1994); Barry Ostrager, *Special Insurance Coverage Issues Arising out of Hazardous Waste/Environmental Cleanup Litigation*, C855 ALI–ABA 1005 (1993). However, Wisconsin law is clear. In *Edgerton*, the Wisconsin Supreme Court held that letters from a governmental agency requesting cleanup do not constitute a "suit," and consequently, do not trigger a duty to defend. *Edgerton*, 517 N.W.2d at 476–77. Under Wisconsin law, a suit is defined as "any proceeding by one person or persons against another or others in a court of law in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or equity." *State v. P.G. Miron Const. Co., Inc.*, 181 Wis.2d 1045, 512 N.W.2d 499 (1994), *quoting* Black's Law Dictionary 1434 (6th ed. 1990).

**2.** Industry-wide revisions of standard form comprehensive general liability contracts occurred in

1973. *See Just v. Land Reclamation, Ltd.*, 456 N.W.2d 570, 574 (1990).

The *Edgerton* court determined that "suit" denotes court proceedings, not a functional equivalent of such proceedings. *Edgerton,* 517 N.W.2d at 476–77. If there are no court proceedings, there is no suit and no accompanying duty to defend. Consequently, since no claim in the form of a lawsuit against the insured seeking damages was filed, Curran's contention that Liberty Mutual incurred a duty to defend fails.

Curran also contends that under the insurance policies, Liberty Mutual is required to reimburse Curran for cleanup and remediation costs. Curran argues that the costs of investigating and cleaning up contamination are "damages" which Liberty Mutual is obliged to pay.

The policies at issue state that Liberty Mutual will pay on behalf of the insured sums which the insured is legally obligated to pay as "damages," excluding damages arising from pollution, unless such damages result from "sudden and accidental" release of contaminants. To determine whether Liberty Mutual must reimburse Curran, one must first determine whether the expenses for which Curran seeks reimbursement are damages. Only if such expenses are damages must a determination be made whether such damages are excluded from coverage by the pollution exclusion clauses.

Wisconsin law provides clear guidance on how to interpret the term "damages" when used in insurance contracts. Damages are "legal compensation for past wrongs or injuries and ... generally not pecuniary in nature. The term 'damages' does not encompass the cost of complying with an injunctive decree." *School District of Shorewood v. Wausau Ins. Cos.,* 170 Wis.2d 347, 488 N.W.2d 82 (1992). In *Edgerton v. General Cas. Co.,* 184 Wis.2d 750, 517 N.W.2d 463 (1994), the Wisconsin Supreme Court held that cleanup and remediation costs under CERCLA and equivalent state statutes do not constitute "damages" within the context of a comprehensive liability insurance policy.

CERCLA and RCRA are complementary components of federal environmental control and cleanup legislation. RCRA promulgates guidelines for cradle-to-grave management of "solid waste" [3] treatment, storage, and disposal activities. 42 U.S.C. § 6902(a). RCRA, enacted in 1976, fails to address the problem of inactive or abandoned waste sites. CERCLA, enacted in 1980, corrects the regulatory gaps left by RCRA, *see United States v. Northeastern Pharmaceutical & Chem. Co.,* 579 F.Supp. 823, 839 (W.D.Mo.1984) ("It was the precise inadequacies resulting from RCRA's lack of applicability to inactive and abandoned hazardous waste disposal sites that prompted the passage of CERCLA."), *aff'd in part and rev'd in part on other grounds,* 810 F.2d 726 (8th Cir.1986), and incorporates RCRA. *See* 42 U.S.C. 9601(14)(C). CERCLA is a remediation statute, enacted to facilitate cleanup of hazardous waste sites by holding all parties connected with the site strictly liable for cleanup costs. 42 U.S.C. § 9607(a).

 Under Wisconsin law, cleanup and remediation expenses under CERCLA are not damages. Cleanup costs incurred under RCRA cannot be treated differently from cleanup costs under CERCLA. Because investigation and remediation costs under both RCRA and CERCLA are not incurred as the result of litigation or a functional equivalent, and because costs are incurred to comply with governmental regulations rather than to remedy a plaintiff for past injuries, these costs cannot be construed as "damages."

Moreover, ignoring the limiting language "as damages" within the text of the policies would require an insurer to pay any sum which the insured is legally obligated to pay for whatever reason. This is an unreasonable interpretation of the policies, clearly beyond the intent of parties when entering into the insurance contract.

Since the Court concludes that the costs are not damages, the court need not address this issue of whether coverage is excluded by the pollution exclusion clause. In this case, the terms of the insurance contract do not

---

**3.** Solid waste is defined broadly to include any "discarded material, including solid, liquid, semisolid, or contained gaseous material result-ing from industrial, commercial, mining, and agricultural operations...." 42 U.S.C. 6903(27).

permit Curran to recover from Liberty Mutual.

Accordingly, it is

ORDERED that summary judgment be granted in favor of the defendant. It is further

ORDERED that motion to stay discovery is dismissed as moot.