**Mary Frances SCHULTZ, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE CO., a foreign corporate insurer, Defendant.**

No. 96–1398–CIV–T–23A.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 19, 1997.

Robert Hill Schultz, Robert H. Schultz & Associates, Bradenton, FL, Daniel Allison Carlton, Law Office of Daniel A. Carlton, Sarasota, FL, for Plaintiff.

Gregory D. Swartwood, Unger, Swartwood, Latham, Whitaker & Indest, P.A., Orlando, FL, for Defendant.

### ORDER

PIZZO, United States Magistrate Judge.

This case involves a disputed claim for accidental death and dismemberment benefits and seat belt user accidental death benefits under an employee welfare benefit plan, as defined and governed by the Employees Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). Both sides have moved for summary judgment (docs. 25 and 27). After considering their submissions, I find that the plan administrator did not act arbitrarily and capriciously when it denied benefits on the basis that the insured's death was not caused by an accident but was a reasonably foreseeable consequence of driving while impaired.[1]

### A. Background [2]

At about 10:00 a.m. on November 21, 1993, Donald D. Rector, Jr. veered off a road in Lee County, Florida, flipping his Ford Bronco II. Unfortunately, his seat belt did not save his life. He suffered massive head injuries and died at Lee Memorial Hospital thirty minutes later. According to the Florida Highway Patrol's traffic homicide investigator, Corporal Tammy L. Binder, Rector

---

1. The parties consented to my jurisdiction pursuant 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (doc. 40).

2. The material facts are not in dispute. *See* ¶ 9 of the Pretrial Statement (doc. 38).

failed to use due care when driving. The officer concluded this after studying the scene, interviewing witnesses who reported seeing Rector weave on and off the road just before the accident, and reviewing the medical examiner's findings. The accident took place on a cloudy, but dry day, and on a road without dangerous conditions. The autopsy revealed that Rector had a blood alcohol content ("BAC") of 0.29% at the time of the incident (more than 3.5 times the legal limit), and had ingested cocaine and barbiturates as well. The medical examiner determined the cause of death to be "[c]raniocerebral injury due to [m]otor vehicle accident due to [m]ultidrug intoxication (alcohol, cocaine, etc.)." [3]

At the time of his death, Rector was employed by Allstate Insurance Company and participated in their Group Life and Accidental Death and Dismemberment Insurance Plan (the "Plan"). The Plan is an employee welfare benefit plan governed by ERISA. Defendant is the claims fiduciary and Plan administrator. The Plan provided that Defendant would pay accidental death and dismemberment benefits and seat belt user accidental death benefits (collectively the "Benefits") in the total amount of $92,000 if Mr. Rector died in an "accident;" (a) that was not "self-inflicted," (b) that involved an injury "independent of all other causes," and (c) that did not occur while the decedent was "committing or trying to commit a felony or other serious crime or an assault."

Plaintiff, Mary Schultz, Rector's mother, was the designated beneficiary under the Plan and, as such, sought to recover the Benefits. After reviewing her claim, Defendant obtained copies of the autopsy report and Cpl. Binder's homicide report. Based on these documents, Defendant refused to pay the Benefits, finding that (1) Mr. Rector's death was not caused by an accident; (2) Mr. Rector's death was the reasonably foreseeable consequence of his driving while impaired; (3) Mr. Rector's death was at least partially self-inflicted; and (4) Mr. Rector died while committing a felony or other serious crime. Plaintiff brings the instant action seeking recovery of Benefits.

### B. Standard of Review

#### 1. Fed.R.Civ.P. 56

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly support summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*

#### 2. Denials of ERISA Benefits

Denials of ERISA benefits are governed by 29 U.S.C. § 1132(a)(1)(B). The statutory scheme, however, does not set forth a standard of review. In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court reaffirmed that courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans." (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). *Firestone* then held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone,* 489 U.S. at 114. The Court cautioned, however, that "if

---

3. The Plaintiff seems to suggest that a tow truck driver's actions at the scene may have contributed to Mr. Rector's death. The tow truck driver, who just happened by the accident, saw Rector bleeding profusely and uprighted the flipped Bronco to reach him. Plaintiff surmises that this may aggravated Rector's condition. There is no evidence to support such a theory. Regardless, this conjecture is irrelevant because it was not before Defendant when it denied benefits. *See Paramore, infra; Jett.*

a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " *Id.* (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

The Eleventh Circuit has interpreted *Firestone* to mandate an arbitrary and capricious standard of review, which is often used interchangeably with an abuse of discretion standard, if the administrator has discretionary authority to make eligibility determinations or to construe disputed terms of the plan. *Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 912 (11th Cir.1997); *Jett v. Blue Cross & Blue Shield of Ala.,* 890 F.2d 1137, 1139 (11th Cir.1989). To trigger this standard of review, the language conferring discretion on the administrator must be "express language unambiguous in its design." *Hunt,* at 912 (quoting *Kirwan v. Marriott Corp.,* 10 F.3d 784, 789 (11th Cir.1994))(internal citations omitted). If the administrator suffers from a conflict of interest in rendering its determination, the district court should apply a heightened arbitrary and capricious standard. *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957; *Hunt.*[4]

The arbitrary and capricious standard is the appropriate standard of review in this case because the Plan contains express language conferring discretionary authority upon the administrator to construe its terms. This standard also applies to the administrator's fact-based conclusions to decide eligibility. Thus, fact-based determinations will not be disturbed if reasonably based upon information known to the administrator at the time the decision was rendered. *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1450 (11th Cir.1997).

### C. Discussion

The Plan provides that Benefits are payable when death is caused by an "accident." That term is not defined in the Plan. Plaintiff argues the Plan does not indicate that consumption of alcohol or drugs renders a death non-accidental, citing various Florida state court decisions in support of her position. However, these are non-ERISA cases. Only federal common law ERISA interpretations are binding on this court. 29 U.S.C. § 1144(a); *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077 (1st Cir.1990).

Typically, the courts have determined whether an incident is "accidental" by (1) inquiring whether the insured expected an injury similar in kind to that suffered; and (2) if he did not, whether the suppositions which underlay that expectation were reasonable. *Wickman,* 908 F.2d 1077; *see also Winters v. Reliance Standard Ins. Co.,* 209 Ga.App. 369, 433 S.E.2d 363 (1993). While Rector did not intend to die, his expectations were unreasonable given his condition.[5] It is just common sense that a driver whose faculties are significantly impaired by alcohol or drugs, or both, risks his life as well as others. The case law is replete with situations in which an insured unwisely and unsuccessfully tempted fate. Denial of benefits is appropriate in such circumstances.

For example, in *Wickman,* the insured swung from the guardrail of a suspension bridge by one hand and fell to his death. The decedent's widow argued that the insured had not intended to die. Nevertheless, the trial judge held that the insured did not

---

**4.** That heightened standard does not apply here. First, a plan beneficiary must demonstrate a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations. After making such a showing, the burden then shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1561, 1566–67 (11th Cir.1990). Plaintiff has not presented any evidence demonstrating any conflict of interest beyond a mere "apparent" conflict of interest. This is not enough. *See also Atwood v. Newmont Gold Co.,*

45 F.3d 1317 (9th Cir.1995); *Cuddington v. Northern Ind. Public Serv. Co.,* 33 F.3d 813 (7th Cir.1994). However, even under that heightened standard, Defendant would still prevail.

**5.** Because there is no evidence of Mr. Rector's actual expectation, an objective analysis is appropriate. In this analysis, "one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Wickman,* 908 F.2d at 1088.

die accidentally for purposes of collecting accidental death benefits under his ERISA policy. Specifically, the trial judge found that the decedent knew or should have known that serious injury or death was a likely consequence of his hanging from the guardrail. The appellate court noted several decisions in which insurance coverage was denied to people killed while playing Russian roulette, stating that "[t]o allow recovery in such circumstances would 'defeat the very purpose or underlying function of accidental life insurance.'" *Id.* at 1087 (quoting *Kennedy v. Washington National Ins. Co.,* 136 Wis.2d 425, 401 N.W.2d 842, 846 (1967)).

In a case strikingly similar to the instant case, a court upheld a denial of accidental death benefits claimed by the beneficiary of a driver who was intoxicated at the time of his death. *Fowler v. Metropolitan Life Ins. Co.,* 938 F.Supp. 476 (W.D.Tenn.1996). There, the decedent had a BAC of .25% at the time of his single vehicle accident. As in this case, the plaintiff contended the insurance company's denial of benefits was arbitrary and capricious because the insurance plan did not expressly exclude benefits because of an insured's intoxication. The court rejected this argument and held that the decedent's death was not accidental because it was the foreseeable result of his intentional actions. *Id.* at 480. Additionally, the court noted, the injury was at least partially self-inflicted. *See also Morton v. Smith,* 91 F.3d 867 (7th Cir.1996)(benefits denied where insured injured when he jumped off the roof of a bar while intoxicated); *Nelson v. Sun Life Assurance Co.,* 962 F.Supp. 1010 (W.D.Mich.1997)(benefits denied where insured died in single car accident with BAC of .18%); *Walker v. Metropolitan Life Ins. Co.,* No. 96–CV–60248–AA (E.D. Mich. April 13, 1997)(benefits denied where insured died in single car accident with BAC of .252%); *Cates v. Metropolitan Life Ins. Co.,* No. 1:95–CV–352 (E.D.Tenn.1996)(benefits denied where insured died in single car accident with BAC of .22%); *McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169 (D.N.J.1993)(benefits denied where insured died from cocaine-related cardiac arrest).

The horrors associated with drinking and driving are highly publicized and well known to the public. "It is clearly foreseeable that driving while intoxicated may result in death or bodily harm." *Fowler,* 938 F.Supp. at 480. Mr. Rector knew, or should have known, that he was risking his life in a real and measurable way by driving while intoxicated. Any other expectation would have been unreasonable. Consequently, Defendant did not act arbitrarily and capriciously in denying Benefits under the Plan to Plaintiff.[6]

### D. Conclusion

In accordance with the above, it is hereby

ORDERED that:

1. Plaintiff's Motion for Summary Judgment and for Order as to Controverted and Uncontroverted Material Facts (doc. 25) is DENIED.

2. Defendant's Motion for Summary Judgment (doc. 27) is GRANTED.

3. The clerk is directed to enter judgment in favor of Defendant and close this file.

---

**6.** Because I find that Defendant did not act arbitrarily and capriciously in concluding that Mr. Rector's death was not "accidental," I need not address Defendant's other arguments in support of its position.