**BANCINSURE, INC., Plaintiff,**

v.

**THE PARK BANK, Defendant.**

No. 03–C–397–C.

United States District Court,
W.D. Wisconsin.

May 13, 2004.

David H. Gregerson, Minneapolis, MN, for Plaintiff.

Daniel G. Jardine, Murphy & Desmond, S.C., Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for declaratory relief, plaintiff BancInsure, Inc. and defendant The Park Bank dispute whether the directors' and officers' liability insurance policy that plaintiff sold to defendant covers the costs defendant incurred in the defense and settlement of a lawsuit brought by M & I Bank, arising out of a check kiting fraud perpetrated against both banks. The court has jurisdiction of the dispute under 28 U.S.C. § 1332.

Presently before the court are motions for summary judgment filed by both parties. Defendant contends that the errors and omissions endorsement it purchased in September 2001 covers the M & I litigation because plaintiff agreed to make the endorsement retroactive to July 1, 2001; plaintiff made no exception for the litigation although it knew of the M & I claims when defendant bought and paid for the endorsement; defendant paid for a full year of coverage; and M & I did not assert a "claim" against defendant as that term is defined in the insurance policy until after July 1, 2001, when the endorse-ment was in effect. Perhaps because insurance companies are not in the business of writing insurance for injuries that have already occurred, plaintiff takes the position that even though the endorsement that defendant purchased modifies the directors' and officers' liability insurance policy and provides coverage for claims made against the bank itself as an entity, it does not provide coverage for the M & I litigation because defendant notified plaintiff of the circumstances leading up to that litigation before the 2001 policy came into effect. Defendant counters with the argument that its notification does not come within the exclusionary clause because at the time it gave notice, it was not an "insured person" under the existing policy; the clause relieves the insurer of liability only for *claims made against insured persons* that arise out of wrongful acts or circumstances that have been the subject of notice.

I agree with plaintiff that defendant's claim for coverage under the 2001 policy and endorsement is barred by the provision in that policy excluding coverage for claims against the insured that arise out of any wrongful act or situation that has been the subject of notice under any policy of insurance in effect before the 2001 policy came into effect. Defendant's notification to plaintiff that it was negotiating a settlement with M & I Bank of the check kiting fraud constituted notice under the 2000 policy that was in effect in May 2001, when the notice was given. Defendant's reading of the exclusionary clause is not a reasonable interpretation of that clause. Therefore, I conclude that plaintiff is not liable to defendant for the costs of the settlement and defense of the M & I lawsuit against defendant. Plaintiff's motion for summary judgment will be granted; defendant's will be denied.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed and material.

## UNDISPUTED FACTS

Plaintiff BancInsure, Inc. is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. It is engaged in the business of providing directors' and officers' liability insurance policies, among other activities. Defendant Park Bank is a Wisconsin banking corporation with its principal place of business in Madison, Wisconsin.

In 2000, plaintiff executed and issued to defendant a directors' and officers' liability policy effective July 1, 2000, and expiring July 1, 2001. The 2000 policy named as insureds "all persons who were, now are or shall be the directors and officers of the Company." Laux Aff., dkt. # 15, exh. # 1, p. 2, § IV(C). On the Declarations page of the policy, *id.* at p. 1, defendant was listed under Item 1, together with The Park Bancorporation, Inc., as "parent company." The policy had coverage limits of $2,000,000 and contained the following relevant provisions:

*Section I. Insuring Agreements.*

A. The Insurer agrees with the Insured Persons that, subject to all the other provisions of this Policy, if during the Policy Period, any Claim or Claims for a Wrongful Act are first made against any Insured Person, and reported to the Insurer, the Insurer, subject to the applicable law, will pay on behalf of the Insured Persons, Loss which the Insured Persons shall be legally obligated to pay and which is not otherwise undertaken to be paid by the Insurer on behalf of the Company in accordance with Section I.B.

\*  \*  \*  \*  \*  \*

*Section IV. Definitions.*

C. "Insured Person or Insured Persons" shall mean all persons who were, now are or shall be the directors and officers of the Company.

\*  \*  \*  \*  \*  \*

E. "Claim" shall mean any judicial or administrative proceeding that is filed against an Insured Person in any state or federal court or administrative agency, in which such Insured Person could be subjected to a binding adjudication of liability for damages or other civil relief. A Claim shall be deemed to have been made on the date that the judicial or administrative proceeding is filed in court or with the administrative agency.

\*  \*  \*  \*  \*  \*

*Section V. Exclusions.*

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured Persons based upon, arising out of, relating to, in consequence of, or in any way involving:

\*  \*  \*  \*  \*  \*

7. (1) any Wrongful Act or any fact, circumstance or situation that has been the subject of notice under any policy of insurance in effect prior to the Inception Date of this Policy, ...

\*  \*  \*  \*  \*  \*

*Section IX. Notice of Claim.*

B. If, during the Policy Period, any Insured Person or the Company (1) receives written or oral notice from any party that it is the intention of such party to hold any Insured Person responsible for a specific Wrongful Act, or (2) becomes aware of any circumstances that may give rise to any Claim against any Insured Person for a specific alleged Wrongful Act; and, as soon as practicable, gives written notice of the potential Claim to the Insurer as referenced in subsections (1) and (2) above, which notice is in any event received by the

Insurer not later than thirty (30) days following the end of the Policy Period, ... then any Claim, the potential of which was specifically identified as required above, shall, for the purpose of the Policy, be treated as a Claim made during the Policy Period.

On April 27, 2001, defendant received notice from M & I Bank representatives about a Electronic Cash Systems check kite fraud that affected both defendant and M & I. Around May 1, 2001, defendant faxed plaintiff notice of discussions with M & I Bank and plaintiff's potential liability under the insurance policy. Plaintiff acknowledged receipt of the notice by letter on May 3, 2001. Before July 1, 2001, defendant remitted payment to its counsel for services rendered relating to M & I's demands for release of funds.

Around June 27, 2001, in response to an agent's request and in anticipation of the July 1 expiration date of the directors' and officers' insurance policy, plaintiff provided defendant a renewal proposal for directors' and officers' insurance that included a quotation for an errors and omissions endorsement. On July 6, 2001, following the expiration of the first policy period, plaintiff's agent requested additional quotations on optional coverages.

On July 12, 2001, M & I Bank brought suit against defendant, claiming conversion of funds held by defendant and breach of contract for services rendered to ATM machines. No individual officers or directors of Park Bank were named as defendants. Until defendant received the summons and complaint, it did not know that M & I Bank was filing a lawsuit. On July 30, 2001, defendant notified plaintiff of the M & I suit. On August 15, 2001, defendant sent plaintiff a renewal order for a directors' and officers' policy. The renewal order did not include a request for an errors and omissions endorsement. On August 22, 2001, plaintiff denied coverage

for the M & I Bank litigation under the directors' and officers' policy and refused to defend defendant against the M & I Bank lawsuit. Following plaintiff's refusal to defend the lawsuit, defendant retained its own counsel.

On August 28, 2001, plaintiff received an amended renewal order request from defendant adding a request for issuance of previously quoted options, including an errors and omissions endorsement. On September 10, 2001, plaintiff added the errors and omissions endorsement to defendant's directors' and officers' policy with a retroactive effective date of July 1, 2001. Defendant paid and plaintiff accepted a full year's premium for the errors and omissions endorsement. Under the terms of the directors' and officers' policy, including the errors and omissions endorsement, plaintiff agreed to defend defendant and pay on behalf of defendant losses in excess of the applicable retention amount of $15,000. The errors and omissions endorsement does not make an express exception of the M & I lawsuit from coverage. The errors and omissions endorsement contains the following relevant provisions:

*Section I. Insuring Agreement*

In consideration of the additional premium paid ... it is agreed that the Basic Policy is amended to pay on behalf of the Insured, Loss ... which the Insured shall become legally obligated to pay, provided Claim or Claims for such Loss is first made against the Insured and is reported to the Insurer while this endorsement is in force ....

*Section II. Definitions*

A. "Insured" means any entity named in Item 1. of the Declarations of the Basic Policy and its employees acting within the scope of their employment.

(Item 1 of the Basic Policy lists "Parent Company": The Park Bancorporation, Inc. and The Park Bank.)

Section V(3) of the errors and omissions endorsement incorporates the definitions of "claim," "wrongful act" and "loss" from the directors' and officers' policy. The endorsement replaces the phrase "insured person" with "insured" and the word "policy" with "endorsement" throughout the basic policy. The "basic policy" is the 2001 directors' and officers' liability insurance policy to which the errors and omissions endorsement is attached. All exclusions contained in or attached by endorsement to the basic policy apply to coverage provided under the 2001 errors and omissions endorsement.

On December 16, 2002, defendant entered into a written settlement with M & I Bank. Defendant paid M & I $182,944.98 for funds held by defendant and $217,055.02 for "costs and sanctions," for a total payment of $400,000. On December 27, 2002, defendant notified plaintiff that it had settled with M & I, that it had paid the bank $400,000 and that it had incurred $357,354.50 in defense costs. On April 7, 2003, defendant filed a claim for reimbursement from plaintiff for $559,409.52, which included defense costs of $357,354.50 and total settlement payments of $400,000, reduced by the funds held by defendant of $182,944.98 and the policy retention amount of $15,000. The claim for reimbursement included fees paid prior to July 1, 2001, during the first policy period.

## OPINION

### A. *Applicable Law*

■ At the outset, it is necessary to decide what law applies to the contract. Although the parties did not propose any facts to show where the policy was issued, the copy of the policy provided in the record indicates that it was issued to defendant at defendant's location in Madison, Wisconsin. From this and from the parties' assumption in their briefs that Wisconsin law applies, I conclude that application of Wisconsin law is appropriate. *State Farm Mutual Automobile Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis.2d 561, 588, 641 N.W.2d 662 (Wisconsin courts presume that Wisconsin law applies unless it is clear that non-forum contacts have greater significance).

### B. *Interpretation of Insurance Contracts*

■ The construction of an insurance contract is a question of law, and thus properly decided on a motion for summary judgment. *Kennedy v. Washington National Ins. Co.*, 136 Wis.2d 425, 428, 401 N.W.2d 842, 844 (Ct.App.1987). Interpretation of the language of an insurance policy is governed by the same rules of construction that govern other contracts, *Peace ex rel. Lerner v. Northwestern National Ins. Co.*, 228 Wis.2d 106, 120, 596 N.W.2d 429, 435 (1999) (citing *Weimer v. Country Mutual Ins. Co.*, 216 Wis.2d 705, 721, 575 N.W.2d 466, 472 (1998)), which means that the primary objective of interpretation is to ascertain and carry out the intentions of the parties. *General Casualty Co. of Wisconsin v. Hills*, 209 Wis.2d 167, 175, 561 N.W.2d 718, 722 (1997).

■ Courts are to interpret the language of an insurance policy according to its plain and ordinary meaning as understood by a reasonable person in the position of the insured. *Kremers–Urban Company v. American Employers Insurance*, 119 Wis.2d 722, 735, 351 N.W.2d 156, 163 (1984). If the language is ambiguous, that is, if it is fairly susceptible to more than one reasonable interpretation when read in context, *Peace ex rel. Lerner*, 228 Wis.2d at 154, 596 N.W.2d at 450, the courts must construe the policy in favor of coverage and construe the exclusions narrowly

against the insurer. *Smith v. Atlantic Mutual Ins. Co.*, 155 Wis.2d 808, 811, 456 N.W.2d 597, 598 (1990). However, when no ambiguity exists, a court will not engage in construction but will merely apply the policy terms, *Kremers–Urban Company*, 119 Wis.2d at 736, 351 N.W.2d at 163, so as "to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake." *Danbeck v. American Family Mutual Insurance Co.*, 245 Wis.2d 186, 193, 629 N.W.2d 150, 154 (2001).

### C. The Policies at Issue

■ Defendant interprets the policy language to provide coverage for the M & I suit. Its argument proceeds as follows. The errors and omissions endorsement that it purchased in September 2001 was retroactive to July 1, 2001. That endorsement made defendant an "Insured Person" under the 2001 policy. One might think that the 2001 policy would not provide any coverage because of the provision in § V(7) of that policy that the insurer is not liable for loss in connection with "any Claim made against the Insured Persons" that arises out of "any Wrongful Act or any fact, circumstance or situation that has been the subject of notice under any policy of insurance in effect prior to the Inception Date of this Policy." However, because only defendant's officers and directors were Insured Persons under the 2000 policy, the § V(7) exclusion does not apply to notice given by defendant. It was not notice of a "claim against an Insured Person." Framed another way, plaintiff knew of the M & I suit when it sold defendant the errors and omissions policy, yet it did not make an express exception from coverage for the suit; the actual filing of the suit (which constitutes the "claim") came during the time the 2001 policy was in effect because plaintiff made the policy retroactive to July 1, 2001; defendant had never given plaintiff notice of a *claim against an insured person* before the 2001 policy took effect; no other exclusion applies; therefore, coverage exists under the 2001 policy and endorsement.

Plaintiff takes issue with defendant's assertion that notifying plaintiff of a potential claim in May 2001 when the 2000 policy was in effect does not constitute "notice of claim" within the terms of the 2001 policy and endorsement. Plaintiff asserts that § V(7) of its 2000 policy excluded liability for any loss "in connection with any Claim made against the Insured Persons" related to any wrongful act or "any fact, circumstance or situation" that has been the subject of notice under any policy of insurance in place before the 2001 policy took effect. Defendant notified plaintiff of the check kiting fraud in May 2001, almost two months before the 2001 policy and endorsement took effect. When M & I sued defendant in July 2001, M & I's "claim" against defendant was based upon, arose out of, related to and was in consequence of the kite fraud.

As reasonable as plaintiff's view of the situation is, defendant contests it, arguing that it makes no sense to allow plaintiff to treat the May 2001 communications between the parties as a notice of claim when defendant was not an insured person under the 2000 policy then in effect. Defendant questions why an insured person should have to give notice under someone else's insurance policy. Def.'s Br., dkt. # 25, at 5 ("In a coverage dispute between [an insured] and his insurer, it would be absurd for the insurer to contend that [the insured] is prohibited from recovering under *his* insurance because there should have been notice given under [someone else's] policy.")

Defendant's question misstates the facts of this case. Plaintiff is not arguing that defendant *should have* given notice under another policy; it is arguing that defen-

dant did give notice under the policy (apparently in an attempt to persuade plaintiff to provide coverage to defendant under a policy in which the only insureds were defendant's directors and officers) and, having done so, is bound by that notice under the terms of the 2001 policy and endorsement. (Oddly enough, defendant proposed as fact that it was the named insured on the 2000 policy and reiterated that "fact" in its opening brief, Def.'s Br., dkt. # 13, at 2. I did not find this proposal as fact because it is not supported by the copy of the 2000 policy in the record, which shows the only insured persons as defendant's directors and officers. If, as defendant proposed, it was an insured person under the 2000 policy, it would have no basis whatsoever for its contention that its notification of the dispute over the check kiting fraud could not have constituted notice under § V(7) because it was not an insured person. On the other hand, it would have had a strong, if not irrefutable claim for coverage under the 2000 policy.)

Defendant's reading of the policies is creative, but it does not stand up to close examination. The 2001 policy replaces the phrase "insured person" with "Insured." It is undisputed that defendant was an "insured" under the 2001 policy and that the same exclusions in the 2000 policy carried over into the 2001 policy. It is evident that the 2001 policy excludes claims made against insureds if notice has been given previously under any prior policy of the facts or situation giving rise to the claim. Defendant gave such notice to plaintiff under the directors' and officers' liability policy it purchased in 2000.

A final point. Defendant makes much of its having paid a full year's premiums for the insurance it purchased from plaintiff. It contends that having done so, it is entitled to coverage for the full year. Defendant is correct. However, its entitlement does not override the exclusions of the

contract it purchased. For its full year's premium, defendant was insured against all events except those of which it had provided notice earlier. It received the benefit of its bargain.

I conclude that the 2001 directors' and officers' liability insurance policy and the errors and omissions endorsement do not provide coverage for defendant of the costs it incurred in defending itself against the claim asserted against it by M & I Bank. Accordingly, I will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.

### ORDER

IT IS ORDERED that

1. Plaintiff BancInsure, Inc.'s motion for summary judgment against defendant The Park Bank is GRANTED;

2. Defendant's motion for summary judgment is DENIED;

3. The clerk of court is directed to enter judgment in favor of the plaintiff and close this case.